UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,　　　:
　　　　　　　　　　　　　　　　:　NO. 1:04-CR-00143
　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　:　**OPINION & ORDER**
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
DANNY E. BURKE.　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:

　　　　　　Before the Court is the Motion to Suppress of
Defendant Danny E. Burke (doc. 14) and the United States's
Memorandum In Opposition thereto (doc. 17). Defendant was indicted
on December 15, 2004 with one count of transporting child
pornography in violation of 18 U.S.C. § 2252A(a)(1)(b)(1) and two
counts of possession of material constituting or containing child
pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2)
and 18 U.S.C. § 2252A(a)(5)(b) and (b)(2) (doc. 17). Defendant, on
December 22, 2004 was arraigned before the Magistrate Judge and
pleaded not guilty to all counts of the indictment (Id.).
Subsequently, the Defendant filed the above noted Motion to
Suppress (doc. 16) and the Court conducted a Hearing on said Motion
on April 12, 2005.

　　　　　　The Court notes that at the Hearing the
Defendant withdrew Branch II of his Motion to Suppress. As such,
only Branch I of Defendant's Motion remains to be addressed by the

Court.  The Defendant's argument is not complicated.  Basically, he argues that the information contained in the affidavit in support of the issuance of the warrant for search of his residence was stale (doc. 14).

Whether sufficient probable cause exists for issuance of a search warrant is, in the first instance, reviewed by the Magistrate Judge.  United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998), quoting Schoeneman v. United States, 317 F.2d 173, 176 (D.C. Cir. 1963).  Spikes held that, "[i]n making that determination, a magistrate judge must 'make a practical, common-sense decision, whether given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  Id. quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Ultimately, a warrant will be sustained provided there was a "'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing.'"  Id. (internal citations omitted.).  Probable cause to search "'is concerned with facts relating to a presently existing condition'" and, as such, the issue may arise that the "probable cause which once existed [may have] . . . grown stale."  Id. (internal citations omitted).

The Supreme Court has noted that the issue of staleness should be "determined by the circumstances of each case."

Id. quoting Sgro v. United States, 287 U.S. 206 (1932). The "circumstances of each case" are judged considering "the length of time between the events listed in the affidavit and the application for the warrant. . ." Id. However, this consideration is "not controlling." Id. Furthermore, "[t]he function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." Id. (internal citations omitted). "Rather, the question of staleness depends on the inherent nature of the crime." Id. (internal citations omitted). As further guidance in addressing a claim of staleness a court should not merely count days on a calendar but should also consider:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?);
>
> (2) the criminal (nomadic or entrenched?);
>
> (3) the thing to be seized (perishable and easily transferable or of enduring utility to its holder?); and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operation base?).

Id. citing Andresen v. State, 331 A.2d 78, 106 (1975). Therefore, "as these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible, that depending upon the nature of the crime, a Magistrate may properly infer that evidence of wrongdoing is still

-3-

to be found on the premises." Id. citing United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991).

The Court is not persuaded by Defendant's argument that the warrant was stale. The Federal Bureau of Investigation ("FBI") Special Agent from the Cincinnati Office (hereinafter "Cincy SA") who ultimately served the search warrant, testified at the Hearing that on November 19, 2003 another Special Agent (hereinafter "Philly SA"), located in the Philadelphia office of the FBI, downloaded from Defendant's home computer, via KaZaA[1], images of child pornography. At the time of the download, however, the Philly SA did not know from whose computer the images had originated (doc. 17).

As such, the Philly SA determined the internet protocol ("IP") address[2] and in so doing discovered that it was assigned to Time Warner Cable (hereinafter "Time Warner") (Id.).

_____

[1] KaZaA is a peer-to-peer file sharing program. See Recording Ass'n of America, Inc. v. Verizon Internet Servs, Inc., 351 F.3d 1229, 1231 (D.C. Cir. 2003). Peer-to-peer ("P2P") systems allow users to disseminate files stored on their computers to other Internet users; Napster is by far the most recognizable peer-to-peer network although many others exist including KaZaA. In re Charter Communications Inc., Subpoena Enforcment Matter, 393 F.3d 771, 773 (8th Cir. 2005).

[2] An IP address "is a unique number, akin to a telephone number, used by . . . [computers] to refer to each other when sending information through the Internet using the Internet Protocol . . ." See e.g., Wikopedia: The Free Encyclopedia, at http://en.wikipedia.org/wiki/Internet_protocol_address (visited April 17, 2005).

The Philly SA subpoenaed Time Warner (Id.).  In response to said subpoena, Time Warner advised the Philly SA that the IP address associated with the date and time of the downloads belonged to the account of Dan Burke, 4503 Rose Marie Road, Franklin, Ohio (Id.).

The Cincy SA testified at the hearing that on November 24, 2003 this information was forwarded to the Cincinnati Office of the FBI, as a "lead," and assigned to the Cincy SA. After receiving the lead, the Cincy SA searched the Warren County, Ohio property records for the premised identified by Time Warner in response to the subpoena.  This search revealed that the home in question, 4503 Rose Marie Road, Franklin, Ohio, was owned by Danny E. Burke.

On December 22, 2003 the Cincy SA drove by the home located at 4503 Rose Marie Road, Franklin, Ohio and took multiple pictures.  The Cincy SA also verified that this property was a single family residence.  Additionally, the Cincy SA investigated other names associated in some way with the property, including the Defendant's ex-wife and father.  It was determined that the ex-wife and the father had nothing to do with the alleged crime.

At the hearing, the Cincy SA testified that on December 29, 2003, he telephoned the Manager of Legal Affairs with Time Warner.  The Manager of Legal Affairs informed the Cincy SA

-5-

that if only one address is provided by Time Warner in response to a subpoena then that address is both the billing and service address.  The Manager of Legal Affairs also told the Cincy SA that the cable modem used at the address could not have been used from a pay telephone.  The Cincy SA testified that this was important information to receive in order to verify that indeed the downloads in question had originated from a computer within the residence of the Defendant.

Ultimately, on December 30, 2003 the Cincy SA provided an affidavit to a United States Magistrate Judge detailing the above information.  A search warrant was issued by the Magistrate Judge on that same day (doc. 17).  The FBI were authorized to execute the warrant on or before January 9, 2004. The warrant was executed on January 9, 2004.

Fifty-two days elapsed between the day the Philly SA downloaded the images from the Defendant's computer and the day the warrant was executed.  Staleness, as noted above, is not determined solely upon the time that elapses between discovery of the information contained in the affidavit for a search warrant and the subsequent search.  Spikes at 923; United States v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997), citing United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988).  In Lacy, the information relied

upon to execute a search warrant for child pornography believed to be on the defendant's computer was over ten months old.  The <u>Lacy</u> court noted that individuals who possess child pornography are reluctant to dispose of said material and often store the material on their computer because their computer is seen as a safe and secure place to store such images.  <u>Lacy</u> at 745-46; <u>see also</u> <u>United States v. Roby</u>, 27 Fed.Appx. 779, *780, 2001 WL 1381093 (9th Cir., Nov. 6, 2001) (finding that images of pornography are "often stored on the user's hard drive for periods as long as eight or nine months.").

Defendant, as note above, has argued only that the warrant was stale.  Applying the factors as enunciated in <u>Sgro</u>, the Court finds that the warrant in the instant matter was not stale.  The first factor cuts neither in the Defendant's favor nor disfavor.  The alleged crime committed was not a "chance encounter in the night" nor has it been asserted that the crime was part of a "regenerating conspiracy."  However, the Defendant was not a "nomad" but rather was "entrenched" as evidenced by the alleged crime occurring in the Defendant's home - a residence verified by the investigative work of the Cincy SA.  As such the second factor weighs against a finding of staleness.  The items to be seized were not of the "perishable" kind.  The Defendant's computer and other items were instead of an "enduring utility" to the Defendant.

Thus, the third factor weighs against staleness.  Additionally, the place to be searched (i.e., Defendant's home) served as a "secure operation base" not as a "forum of criminal convenience."  The fourth factor also weighs against a finding of staleness.

Furthermore, the "inherent nature of the crime" points to the likelihood that the images would remain on the Defendant's computer for a period of time.  Here, only fifty-two days passed between the downloading of the images from the Defendant's computer to the actual execution of the search warrant. Fifty-two days is a far cry from the eight to ten months that elapsed in <u>Lacy</u> and <u>Roby</u>.  Furthermore, the inherent nature of computer crimes requires investigative techniques that may require significant time.  For example, after downloading the images the Philly SA had to subpoena Time Warner to acquire the IP address. Then, once the "lead" was forwarded to the Cincy SA, that agent had to survey the Defendant's home to insure that it was a single residence.  He also had to contact Time Warner to verify that the billing address for the account was, in fact, also the address where the computer was located from which the Philly SA downloaded the images.  These steps take time.  Therefore, the Court finds that the time, fifty-two days, which elapsed between the events

-8-

listed in the affidavit and the application of the search warrant does not render the warrant stale.

Consequently, Defendant's Motion to Suppress is DENIED.


SO ORDERED.


Dated: April 19, 2005          /s/ S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge